UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BOBBY FERGUSON                      CIVIL ACTION NO. 12-cv-0942

VERSUS                              JUDGE STAGG

STEVE PRATOR, ET AL                 MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Bobby Ferguson ("Plaintiff") is a self-represented inmate.  He filed this civil rights

action against officials at the Caddo Correctional Center, where he was formerly housed as

a pretrial detainee.  Plaintiff alleges that a deputy, for no reason, twisted Plaintiff's right hand

and injured it.  Plaintiff alleges that medical staff prescribed only exercise; a jail doctor told

Plaintiff he needed to see a bone specialist at LSU Medical Center but refused to send

Plaintiff for a visit; and Plaintiff's right hand is now deformed and sometimes inoperative.

Plaintiff filed a Motion for Summary Judgment (Doc. 21) in which he offered an

unsworn recitation of facts that he asserts entitle him to summary judgment.  Defendants

responded with their own Motion for Summary Judgment (Doc. 25) that is supported by

affidavits and medical records.  For the reasons that follow, it is recommended that Plaintiff's

motion be denied and that Defendants' motion be granted.

**Summary Judgment Standard**

Summary judgment is appropriate "if  the movant  shows  that  there  is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  A fact is "material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

The rules above apply in the typical situation where a defendant moves for summary judgment on the grounds that the plaintiff cannot establish his case.  Defendants have filed such a motion, but Plaintiff has filed his own motion as well.  For Plaintiff to obtain a summary judgment in his favor, he must establish evidence that would entitle him to judgment as a matter of law if it went uncontroverted at trial. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264 (5th Cir. 1991).

**Excessive Force**

Defendants state that Plaintiff was a pretrial detainee at the time of the incident.  The claims of pretrial detainees are assessed under the due process clause of the Fourteenth

Amendment rather than the Eighth Amendment, which applies to convicted prisoners. But when a court is called upon to examine the amount of force used on a pretrial detainee for the purpose of institutional security, the Fifth Circuit adopts Eighth Amendment standards. The question is whether the measures taken inflicted unnecessary and wanton pain and suffering, which depends on whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. Edwards v. Loggins, 476 Fed. Appx. 325, 328 (5th Cir. 2012); Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1993).

Plaintiff alleges in his complaint and unsworn motion that he was summoned from his dorm to speak to a Shreveport Police Department detective in an interview room.  Plaintiff states that, after the detective told him the reason for the visit, Plaintiff invoked his Fifth Amendment privilege in a calm manner and refused to give a statement.  Deputy Tony Dickey then escorted Plaintiff back to his dorm.  Plaintiff alleges that Dickey, with no reason or justification, grabbed him from behind and twisted his right hand, which became extremely painful and swollen.

Defendants respond with affidavits from Detective Richard Turpen and Deputy Dickey.  Turpen testifies that he went to the jail to interview Plaintiff regarding Plaintiff's possible involvement with a stolen vehicle and a hit and run.  Plaintiff was being held at the jail on unrelated charges.  Turpen testifies that Plaintiff, upon being told that Turpen wanted to talk to him about a stolen truck, immediately said he did not want to make a statement and

did not have anything to do with the truck.  Plaintiff was "animated and somewhat loud" when Turpen told him that he would be charged with felony theft.

Turpen testifies that Plaintiff stood up and asked if he could leave, and Turpen told him to wait for a deputy to escort him.  Deputy Dickey approached Plaintiff at about that time and escorted him from the interview room.  Turpen testifies that he did not see Dickey use any type of excessive force and did not hear Plaintiff make any statements or complaints about how Dickey was escorting him or that he was in any type of pain.  Turpen did not notice anything unusual about the escort technique used by Dickey.

Deputy Dickey testifies that he heard "yelling and cursing sounds" coming from the interview room so walked toward it.  As he approached, he saw the door swing open with Plaintiff standing in the doorway.  Plaintiff's hands were above his waist, and he was yelling and cursing toward the investigators.  Dickey testifies that, based on the disruptive behavior and potential for Plaintiff to strike an investigator, he secured Plaintiff's *left* hand behind his back and escorted him from the room and into a hallway.  He then turned over Plaintiff to an escort deputy, who took Plaintiff back to his housing unit.

Dickey testifies that he escorted Plaintiff using a single-arm escort by holding his left hand and arm.  No force other than this "minimal control technique" was used.  Dickey states that Plaintiff never complained that he was in any pain, but he did appear to be very upset about something as he left the interview room.

Plaintiff's bare allegations in his complaint and memorandum, unsupported by competent summary judgment evidence, do not create a genuine dispute of material fact as

to whether Deputy Dickey used excessive force.  "Unsworn pleadings, memoranda or the like are not ... competent summary judgment evidence."  Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir.1991).  All of the competent evidence in the record, offered by Defendants, reflects a small amount of force applied in a good faith effort to maintain or restore discipline in a situation where an inmate had become loud and angry in the presence of non-prisoners. There is no evidence that the force was applied maliciously and sadistically for the purpose of causing harm.  Defendants are entitled to summary judgment on the excessive force claim.

**Medical Care**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs."  Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc).  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.  Estelle, 97 S.Ct. at 291-92.

Plaintiff alleges that he made an emergency sick call to complain of injury to his right hand.  Medical staff allegedly X-rayed the hand, told Plaintiff to exercise it, and that a doctor would see him later.  Plaintiff alleged that he did see a jail doctor the next week.  The doctor said Plaintiff needed to see a bone specialist at LSU Medical Center but refused to send Plaintiff for such a visit.  Plaintiff states that he was left to deal with pain and suffering of a "possible broken hand" that is "presently deformed and inoperative from time to time."

Defendants again respond to these unsworn allegations with competent summary judgment evidence.  Nurse Sheila Wright is a registered nurse and health services director at the jail medical unit.  She testifies that Plaintiff was seen on the date of the alleged incident.  He complained of a broken right hand.  X-rays were taken that day.  A radiologist reviewed two X-rays of the right hand and reported that the "boney alignment was satisfactory" and there was "no fracture or other acute abnormality."

Nurse Wright testifies that Plaintiff returned two days later and complained that his hand wasn't "right."  He was prescribed Tylenol for pain, given an ice pack, and scheduled to see a physician at the next non-emergency physician visit at the jail.  Dr. Nelson examined Plaintiff four days later and found no serious injury.  He recommended exercising the hand but also ordered a second X-ray.  A radiologist again reviewed the X-rays and reported "no fracture or other acute abnormality."  Deputy Michael Escude testified that he saw Plaintiff the next day using his right hand, without any sign of pain, to put on a pair of socks.  Escude made note of it because he knew Plaintiff was claiming the hand had been injured and could not be used.

About two months later, Plaintiff requested to go to the LSU Health Sciences Center because his "hand is broken."  A nurse offered to put Plaintiff on the list to see a doctor and said she could order another X-ray or give him medicine for his pain.  Plaintiff told the nurse, "I don't want X-rays or meds.  I just want to go to LSU."  He added, "I already seen the doctor here and he didn't do anything."  Plaintiff returned to the housing unit.  About five months later, Plaintiff made a written request to be cleared by medical to enroll in a work

release program.  He stated, "It's nothing wrong with me.  I'm in good health all the way around."

Plaintiff may disagree with the conclusions and treatment options offered by jail medical staff, but disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs.  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).  There is no hint of deliberate indifference to a serious medical need.  Plaintiff was examined, X-rayed, and offered treatment, including medication to ease his pain, each time he requested it.  There is no evidence to support the claim that a physician told Plaintiff he needed to see a bone specialist.  The evidence is all to the contrary, that there was nothing wrong with the bones in Plaintiff's hand.  Perhaps Plaintiff actually suffered pain or injury that the repeated examinations did not discover, but that is a far cry from deliberate indifference to a degree that the Constitution is violated.  Defendants are entitled to summary judgment on the medical indifference claims.

**Sheriff Prator and Other Defendants**

Plaintiff's complaint also named as defendants Sheriff Steve Prator and the Caddo Parish Sheriff's Office.  Plaintiff does not allege that Sheriff Prator played any personal role in the use of force or medical care.  Supervisor liability may attach under § 1983 in limited circumstances, but only after an underlying constitutional violation by a deputy has been demonstrated.  City of Los Angeles v. Heller, 106 S.Ct. 1571 (1986); Smith v. Walden, 2000 WL 1056091 (5th Cir. 2000).  Summary judgment is recommended on the underlying claims,

so any supervisor liability claim against Prator should also be dismissed.  The same is true of the Sheriff's Office, which is not even a legal entity capable of being sued.  <u>Cozzo v. Tangipahoa Parish Council</u>, 279 F.3d 273, 283 (5th Cir. 2002).  The Medical Administration Caddo Correctional Center, named in the complaint, is also not a separate legal entity.  Any claim against it should be dismissed.

Finally, Caddo Parish is named as a defendant, but Plaintiff makes no allegations against it.  The parish governing body is required by state law to provide a good and sufficient jail, but it has no responsibility over the daily operations of the jail.  <u>Hicks v. Page</u>, 2010 WL 2243584 (W.D. La. 2010), <u>R&R adopted</u>, 2010 WL 2246393 (W.D. La. 2010); <u>Martin v. Vernon Parish Sheriff's Office</u>, 2010 WL 3522076 *8 (W.D. La. 2010).  There is nothing in the record that would allow a viable claim against the parish, so it should also be dismissed.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's **Motion for Summary Judgment (Doc. 21)** be **denied** and that Defendants' **Motion for Summary Judgment (Doc. 25)** be **granted.**

**IT IS FURTHER RECOMMENDED** that the claims against those defendants named in the complaint but who did not join in the motion also be **dismissed** based on the lack of an underlying constitutional violation and other reasons stated in the Report and Recommendation.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of April, 2014.

Mark L. Hornsby
U.S. Magistrate Judge